IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN LENNEX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-877 |
| | ) | Judge Joy Flowers Conti |
| WAL-MART STORES EAST, LP | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

**I. RECOMMENDATION**

It is respectfully recommended that the Defendant's Motion for Summary Judgment be denied.

**II. REPORT**

This case involves claims related to Defendant's alleged failure to accommodate, and discriminatory and/or retaliatory treatment and termination of Plaintiff, John Lennex ("Lennex"), in response to Lennex's request for accommodation of disability resulting from his coronary condition, in violation of Americans with Disabilities Act, 42 U.S.C. 12112 *et seq.* (the "ADA") and/or the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. Ann. § 955(a) *et seq.* (the "PHRA"). Because a reasonable jury could find, on the basis of the record evidence, that -

(1) Lennex is "disabled" within the meaning of the ADA, *i.e.*, that he suffers a "substantial limitation" of one or more major life activities, or Defendant regarded him as disabled;

(2) Lennex was, with accommodation, otherwise qualified for and able to do his job;

(3) Defendant failed to meet its duty to dialog in good faith and provide reasonable accommodation (such as the chair or stool Lennex had used in his position as an assembler for eight (8) months prior); and

(4) Defendant discriminated against Plaintiff in treatment and/or termination owing to his disability or perceived disability and/or retaliated against him -

Defendant's Motion for Summary Judgment should be denied.

### A. Statement of Facts and Procedural History

This case is framed as a civil action for relief in consequence of Defendant's alleged failure to accommodate, discriminatory and/or retaliatory treatment and termination of Plaintiff in response to his request for accommodation.[1] Taking the facts in the light most favorable to the non-movant Plaintiff:

---

1. The ADA provides that no covered employer "shall discriminate against a qualified individual with a disability . . . in regard to . . . advancement, or discharge of employees, . . . and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a). A "qualified individual with a disability" is one who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." Id. at § 12111(8). Disability claims under the PHRA are considered under the same analysis as are cases under the ADA. See, *e.g.*, Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996).

Lennex, who has a history of coronary artery disease and ischemic cardiomyopathy,[2] was previously employed as a truck driver. After retiring from that position, Lennex was employed by Wal-Mart as an "assembler" on September 7, 2004. Mr. Phillips, the Store Manager who employed Lennex, was aware of Lennex's heart disease and that he had resultant physical restrictions, including lifting and standing restrictions,[3] but hired him for a Bicycle Assembler position.[4] When Lennex was employed, and for more than eight (8) months thereafter, (1) the assemblers sat on chairs or stools while working and (2) other employees assisted Lennex with

---

2. Plaintiff suffered two heart attacks in the late 1980s and had coronary bypass surgery in 1994. See Brief in Opposition at 3. He underwent heart surgery for the installation of a defibrillator in 2000 and again in January 2001. See Memorandum of Law in Support at 5. His list of medical conditions includes "severe ischemic cardiomyopathy resulting in congestive heart failure, severe left ventricular dysfunction, anteroseptal hypokinesis, coronary artery disease, hypertension, and hyperlipidemia." Brief in Opposition at 3-4 (citing medical records of Dr. Bowser, Plaintiff's cardiologist).

3. Plaintiff advised Mr. Phillips that he was not to lift above his head or lift anything heavy. See Defendant's Statement of Facts at ¶15.

4. Lennex testifies that his primary duty was to assemble bicycles, grills, patio furniture and toys. He attests that Mr. Phillips instructed him not to climb ladders or do heavy lifting, that Defendant's policy is that employees "team lift" heavy items, and that coworkers were readily available to assist him with occasional lifting as necessary. See, e.g., Brief in Opposition at 1 n. 2. See also id. at 13 (citing to record); 17 (citing to further record evidence that primary function of Assembler position is to assemble). Compare Defendant's Statement of Facts at ¶¶ 19, 21 (the Assembler job description includes picking up, lifting - including items up to fifty (50) pounds, carrying and placing items of varying sizes, moving to various locations, and moving up and down a ladder).

Defendant also asserts that a significant function of the Assembler position was to spend up to two hours on the Sales Floor and/or in the Toy Department, which assertion Plaintiff disputes. Compare Defendant's Statement of Facts at ¶ 28.

heavy and over-head lifting. During his employment, Plaintiff received job reviews indicating that his performance was satisfactory.[5]

In late April, 2005, a new Department Manager, Mr. Wilson, informed the Bicycle Assembly staff that they would not be permitted to use chairs or stools while working.[6] Lennex requested that he be allowed to continue to sit while assembling, owing to his medical restrictions. Wal-Mart "suspended him that very same day", removed him from the schedule, and required that Lennex take an unpaid leave of absence and complete a formal request for accommodation. See Brief in Opposition at 1, 18;[7] Defendant's Statement of Facts at ¶ 5 (noting that employees who request accommodation must "complete a Reasonable Accommodation form

---

5. Defendant presents evidence that Plaintiff's performance was not optimal, and that he was previously advised that he "needed to build bicycles in a more timely manner, . . . show more urgency . . . ., and needed to consistently keep busy." Defendant's Statement of Facts at ¶ 36. Defendant also avers that Plaintiff was "coached for integrity . . . when he improperly removed a radio from the sales floor so that he could listen to the radio while he worked" and "disciplined" for misrepresenting the facts of the incident. Id. at ¶ 41. Plaintiff disputes this characterization, attesting that his performance evaluation was that he "meets expectations", that he was never disciplined for productivity, and that a coworker directed him to replace a broken radio used by the employees. See Plaintiff's Response to Defendant's Statement of Facts at 11-12.

6. Plaintiff asserts that all chairs were removed from employee use at the store when the Store Manager who replaced Mr. Phillips - Mr. Harrer - observed a "Greeter" sitting on a chair at the store front and disapproved. See Brief in Opposition at 17 n. 16 (citing to record). See also Defendant's Statement of Facts at ¶ 42 ("In or about April 2005, Robert Harrer became the Store Manager . . . ."); id. at ¶¶ 43-44 (stating that Mr. Wilson made the Assembler announcement on about April 20, 2005 at Mr. Harrer's direction and because Mr. Harrer believed sitting contributed to low productivity).

7. Lennox's testimony is that he asked to be permitted to do other work rather than being sent home, but Mr. Wilson declined. See Brief in Opposition at 14 (citing to record). Compare Defendant's Statement of Facts at ¶ 7 ("Wal-Mart's Leave of Absence Policy *enables* associates to take time away from work while maintaining their eligibility for benefits and continuity of employment. this Policy provides that medical leave *may be granted* to an associate who is unable to perform his or her regular work duties due to a medical condition.") (emphasis added).

and provide supporting medical documentation"). In late April and early May, 2005, Lennex provided, in accordance with Defendant's requirements, medical leave and accommodation documentation from his treating cardiologist. In the leave documentation submitted in late April, 2005, Dr. Bowser advised that Plaintiff "must sit while assembling bikes" and should not lift more than fifteen (15) pounds.[8] In the accommodation documentation submitted in early May, Dr. Bowser advised that Plaintiff "tire[d] easily", had "leg pain and edema with prolonged standing" and was "unable to stand for long periods of time."[9] Finally, on a request for clarification of Plaintiff's standing restrictions, Dr. Bowser advised in June, 2005 that Lennex should not stand for more than fifteen (15) minute intervals.[10] Plaintiff's cardiologist had not

---

8. Defendant's Statement of Facts at ¶ 98.

9. Id. at ¶ 105.

10. Id. at ¶ 107. Wal-Mart asserts that these restrictions lack objective support in the medical evidence. For example, Defendant points to Plaintiff's certification for return to work following his heart surgery in 2001; his classification as an "NYHA Class I" cardiac patient, *i.e.*, one with no limitations on physical activities; his reporting of regular exercise and the absence of complaint in Lennex's medical records. See Memorandum of Law In Support at 5-6; id. at 7 (asserting the "lack of medical evidence of any ongoing functional disability"). See also Defendant's Statement of Facts at ¶¶ 59-77 (discussing Plaintiff's return to work in 2001; his NYHA classification; his denial of any exertion-related chest pain or shortness of breath; his swimming and regular exercise; and evidence that his cardiac condition was "well compensated" and he was "very functional" and "remained active"). But see Plaintiff's Response to Defendant's Statement of Facts at 16-20 (addressing and disputing some characterizations of medical evidence). It does not appear to the Court that any of this evidence is preclusive of a reasonable finding that Plaintiff was limited in his abilities to lift heavy items, to lift overhead or to stand while assembling. Wal-Mart also questions Plaintiff's credibility in terminating his May, 2005 stress test early "purportedly due to shortness of breath and cramping in his legs." Defendant's Statement of Facts at ¶ 81, n. 10. See also Plaintiff's Response to Defendant's Statement of Facts at 19. Cf. *infra* (discussing appropriate scope of determinations on motion for summary judgment).

5

previously placed specific numeric restrictions on his lifting and standing, which had only been more generally circumscribed.[11]

Wal-Mart repeatedly denied Lennex's requests to return to his job or to speak with Mr. Harrer, then Store Manager; his visits to the store were rebuffed by Ms. Hill, the Personnel Manager.[12] During this time, Wal-Mart engaged in no dialogue with Lennex regarding reasonable accommodation of his physical limitations;[13] nor does it appear to have engaged in any meaningful inquiry regarding its assumptions of the effect on productivity of permitting an assembler to sit during assembly work.[14]

---

11. See Defendant's Statement of Facts at ¶¶ 92-93.

12. See, *e.g.*, Brief in Opposition at 18 (citing to record); Plaintiff's Response to Defendant's Statement of Facts at 4-5, 24-25. Compare Defendant's Statement of Facts at ¶ 10 ("Wal-Mart also has a policy on Open Door Communications, which provides associates with the opportunity to discuss any and all matters with any supervisor or salaried member of management, without having to follow any formal 'chain of command.'"). Cf. id. at ¶ 117 ("At no point from April 2005 to August 2005 did Plaintiff ever utilize Wal-Mart's Open Door process or contact anyone *above the Store Manager* . . . .") (emphasis added).

13. See, *e.g.*, Brief in Opposition at 21-22 (citing to record testimony that Defendant never discussed with Lennex, with other assemblers, amongst internal store management, or with Defendant's ADA coordinators, the specific parameters of what accommodation might enable him to continue in his Assembler position without undue hardship to the employer or imposition to co-workers).

14. See, *e.g.*, Brief in Opposition at 16 (citing Deposition testimony of Store Manager Harrer suggesting lack of objective basis for his assumption that optional sitting during assembly work would meaningfully decrease efficiency); id. at 21-22 (citing to record regarding lack of observation of assembly work or informational inquiry with Plaintiff or co-workers); Plaintiff's Response to Defendant's Statement of Facts at 12. Compare Defendant's Statement of Facts at ¶ 35 ("Plaintiff indicated that . . . he always built bicycles sitting down because he 'could see better and . . . be closer to the bike.'").

The record is not entirely clear as to whether Defendant at some point came to view the return of a chair or stool to Plaintiff's use *as an Assembler* as a reasonable accommodation.

(continued...)

Later that Summer, Wal-Mart offered to permit Lennex to return to work in the lower-pay position of a "People Greeter". Lennex declined this position because (1) he believed he was able to continue to perform his Bicycle Assembler position with continuing reasonable accommodation[15] and (2) his physician advised that likelihood of customer conflict in the Greeter position - which is significantly intended to apprehend shoplifters - would risk a degree of stress ill-advised for a cardiac patient.[16] He was terminated by Wal-Mart in August, 2005.

---

14. (...continued)
Compare Defendant's Statement of Facts at ¶ 108 ("Wal-Mart approved Plaintiff's request for a chair. But because an essential function of the Assembler position is the ability to lift in excess of 15 pounds, Wal-Mart could not reasonably accommodate [Plaintiff's] lifting restriction.") (citing to deposition of Personnel Manager, Ms. Hill); ¶ 109 (Wal-Mart "offered Plaintiff a position as a People Greeter with a stool") with ¶¶ 19, 21 ("The essential functions of the Assembler position included constantly picking up, lifting, carrying and placing items of varying sizes while moving to various locations and moving up and down a ladder.") (citing to Defendant's job description); ¶ 24 ("The essential functions of the Assembler position also included accurately and efficiently placing items in their correct locations, which may include bending, stooping and reaching.") (same). See also Memorandum of Law In Support at 15 ("Moreover, the only accommodation that Plaintiff ever requested - that he be permitted to sit on a chair while assembling bicycles - would not have enabled him to perform the essential lifting functions of the Assembler position due to his alleged 15-pound lifting restriction."). Compare Plaintiff's Response to Defendant's Statement of Facts at 23 (averring that Defendant's ¶ 108 is "misleading, because Lennex requested use of a chair in his assembler job, and [D]efendant did not approve that specific request"); id. (further averring that Defendant "could have reasonably accommodated Lennex by simply allowing him to sit on a chair while assembling bikes and receive assistance from coworkers for marginal lifting duties, as he had been accommodated for 8 months prior"). Cf 42 U.S.C. § 12119 (providing that a "reasonable accommodation" may include job restructuring).

15. See Plaintiff's Response to Defendant's Statement of Facts at 3 ("[A]t the time Defendant forced Lennex to take the leave of absence, he informed it that he was able to continue working in his assembler job with the minimal reasonable accommodations that had been provided for the prior eight months.").

16. See Brief in Opposition at 22-23. The Court observes that the Greeter position as described by Defendant also appears to entail some degree of standing/walking and lifting. See Defendant's Statement of Facts at ¶ 110 (essential functions include "providing shopping and motorized carts,
(continued...)

Wal-Mart's relevant averments, in moving for summary judgment, include that (1) Plaintiff was not disabled in that he suffered no "substantial limitation" on a major life activity, (2) because of Plaintiff's asserted lifting and standing restrictions, he was unable to perform "essential" functions of the Bicycle Assembler position, (3) Plaintiff was terminated for poor job performance and/or for declining the reasonable accommodation of a position as Greeter, and/or (4) Plaintiff abandoned his employment.

### B. Motion for Summary Judgment

Summary judgment is to be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under applicable law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). And a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

All doubts as to the existence of a genuine issue of material fact are resolved against the moving party, and the entire record is examined in the light most favorable to the nonmoving party. Continental Ins. Co. v. Bodie, 682 F.2d 436, 438 (3d Cir. 1982). Summary judgment is intended to provide an opportunity for the "dispos[ition] of meritless cases." See Big Apple

---

16. (...continued)
assisting with merchandise returns and deactivating items that trigger . . . alarms"). Defendant's conclusion that Plaintiff could not continue to perform his Assembler work with reasonable accommodation, but could perform a Greeter position that included lifting/carrying merchandise for return or deactivation appears to raise fact questions.

8

BMW, Inc. v. BMW of N. Am., 974 F.2d 1358, 1362 (3d Cir. 1992). And credibility determinations on material issues are not to be made in the context of a motion for summary judgment. See Josey v. John R. Hollingsworth Corp., 996 F.2d 632 (3d Cir. 1993); Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007).

    C.  Analysis

      1.  Disability Discrimination

To survive summary judgment as to his *prima facie* case of disability discrimination under the ADA, Plaintiff must provide evidence sufficient to enable a reasonable jury to find that (1) he is "disabled" within the meaning of the ADA; (2) he is "otherwise qualified" to perform the essential functions of the job, with or without reasonable accommodation; and (3) he has suffered an adverse employment decision as a result of discrimination. See, *e.g.*, Shiring v. Runyon, 90 F.3d 827, 831 (3d Cir. 1996); Memorandum of Law in Support at 2. The relevant time period is when the adverse action(s) occurred, in this case beginning in April, 2005 when Defendant placed Lennex on involuntary unpaid leave, subsequently offered him another position, and then terminated his employment.

To the extent that Plaintiff was only able to perform his job with reasonable accommodation, and requested such accommodation, it behooved Defendant to meaningfully attempt to provide it. See discusion, *infra*. To the extent that Defendant has offered alternative, non-discriminatory reasons for its adverse actions, Plaintiff must provide sufficient evidence to reasonably infer pretext. See Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981); Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994) (requiring that a plaintiff, to defeat

9

summary judgment, submit evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe than an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action").[17]

### (a) Disability - Substantial Limitation

A "disability" for purposes of the ADA is a physical or mental impairment that effects a "substantial limitation" on one or more of the major life activities of such individual; a record of such impairment; or being regarded has having such impairment. See 42 U.S.C. § 12102(2). "Substantial limitation" is itself assessed by reference to the plaintiff's ability to perform such activity in comparison to the average person in the general population; more specifically, it entails an assessment of the nature and severity of the impairment, its duration/expected duration, and its impacts. See 29 C.F.R. § 1630.2(j).

In the case at hand, Plaintiff has sufficiently established evidence to support a rational finding in his favor on the issue of disability. More particularly, although allegations of cardiovascular disease are alone insufficient to establish disability,[18] Plaintiff has provided medical evidence of a substantial limitation of a major life activity. Plaintiff's treating cardiologist expressly advised Defendant that Lennex was limited in his ability to lift more than

---

17. In other words, under Fuentes, a plaintiff must "point to evidence that proves . . . discrimination in the same way that critical facts are generally proved - based solely on the natural probative force of the evidence." Keller v. Orix Credit Alliance, 130 F.3d 1101, 1108-09 (3d Cir. 1997) (*en banc*).

18. See Snyder v. Norfolk Southern Railway Corp., 463 F.Supp.2d 528, 539 n. 10 (E.D. Pa. 2006) (cited in Memorandum of Law in Support at 5).

fifteen (15) pounds or to stand for more than fifteen (15) minute intervals.[19] As Defendant notes, the Third Circuit has held that an employee's inability to lift more than ten (10) pounds does not constitute a "substantial limitation" on a major life activity under the ADA. See Memorandum of Law In Support at 9 (citing Marinelli v. City of Erie, 217 F.3d 354, 364 (3d Cir. 2000)).[20] As to standing, however, the case law suggests that restriction to intervals of not more than fifteen (15) minutes can establish a substantial limitation. Compare, e.g., Taylor, 177 F.3d at 186-87 (holding that plaintiff was not substantially limited in standing where she could stand for at least 50 minutes without resting because such ability was "not significantly less than that of an average person")[21] with E.E.O.C. v. Sharp Manuf. Co. of America, 2008 WL 351583 (W.D. Tenn. Feb. 1, 2008) (concluding that genuine issue of material fact existed as to substantial limitation on ability to stand at work where plaintiff's testimony was that she could not stand for more than 10 minute intervals and medical evidence suggested, not unambiguously, that she should not stand for more

---

19. Lifting and standing are expressly cited as examples of major life activities in the regulations. See 45 C.F.R. § 84.3(j); Kralik v. Durbin, 130 F.3d 76, 79 (3d Cir. 1997).

   Plaintiff's evidence is that he experiences lower extremity edema and fatigue with more prolonged intervals of standing. See Brief in Opposition at 1, 6 (citing evidence of record).

20. Other Courts have disagreed. See, e.g., Lowe v. Angelo's Italian Foods, Inc., 87 F.3d 1170, 1174 (10th Cir. 1996) (finding 15 pound lifting restriction sufficient to deny summary judgment); Brief in Opposition at 6 (citing cases).

21. See also Buskirk v. Apollo Metals, 116 F.Supp.2d 591, 599 (E.D. Pa. 2000) (concluding that restriction to 1 to 3 hours of continuous standing was not a substantial limitation); Williams v. Excel Foundry & Machine, Inc., 489 F.3d 309 (7th Cir. 2007) (concluding that plaintiff was not substantially limited in standing where he was able to stand for more than 30 to 40 minutes at a time) (citing with approval to Taylor and contrasting EEOC's direction that a person is substantially limited in his ability to walk if he can do so only "for very brief periods of time") (quoting 29 C.F.R. pt. 1630, App. § 1630.2(j)).

than 3 hours per work day).[22] Here, as in the Sharp decision issued earlier this month, a reasonable jury could conclude that Plaintiff's ability to stand was substantially limited in comparison to that of most people.[23]

In the alternative, the evidence is sufficient to enable a reasonable jury to conclude that Defendant regarded Plaintiff as disabled; *i.e.* following receipt of the requested documentation from Plaintiff's cardiologist, Dr. Bowser, Wal-Mart continued Lennex's involuntary unpaid leave, concluded without further medical or personal inquiry or dialog that he could not perform the essential functions of his position with any reasonable accommodation, and ultimately terminated his employment. See Brief in Opposition at 8-10.

The Court observes that some of Defendant's assertions regarding the relative strength of the medical record are well taken. See *supra* n. 10; Memorandum of Law in Support at 6-7. See generally Defendant's Statement of Facts. It reiterates, however, that under the applicable standard, Plaintiff has made a sufficient showing.[24]

---

22. In this very recent decision, analogous in several interesting respects, the District Court denied summary judgment where a plaintiff with osteoarthritis was reassigned by defendant from a seated to a standing assembler position, could not meet the standing requirements owing to physical limitations, and requested accommodation/reassignment to her prior seated assembler position. The employer denied her request, sent her home, and subsequently terminated her. The Court concluded that the defendant had failed to establish that standing was an essential job function and that there were material questions regarding the availability of reasonable accommodation by, *e.g.*, return to seated assembler work.

23. See also Evans v. Potter, 2003 WL 24085317 (D.Md. Sept. 9, 2003) (declining to hold as a matter of law that inability to walk or stand for more than a fifteen minute interval was not a substantial impairment).

24. The Court finds no merit in Defendant's inclusion of assertions regarding Plaintiff's use of tobacco/nicotine to the extent Defendant intends to suggest that they belie his claim of coronary disability. See, *e.g.*, Defendant's Statement of Facts at ¶¶ 53, 62. As the Court does not doubt

(continued...)

**(b) "Otherwise Qualified"**

A "qualified individual with a disability" is one who (1) satisfies the prerequisites for the position, *e.g.*, possesses the appropriate educational background and licenses; and (2) can perform the essential functions of the position held or desired, with or without reasonable accommodation. See Gaul v. Lucent Technologies, Inc., 134 F.3d 576, 580 (3d Cir. 1998). The record suggests that Plaintiff was able to perform his job satisfactorily for more than eight (8) months. Defendant's basis for contending that Plaintiff was not otherwise qualified for his position is his physician's response to Wal-Mart's requirement for medical documentation to support Lennex's request that he continue to be allowed to sit while performing assembly work. More particularly, Wal-Mart asserts that both lifting more than fifteen (15) pounds and standing for more than fifteen (15) minutes at a time were essential functions of the Bicycle Assembler position.

The Court notes that the essential functions of a position are not whatever "the employer regards" them to be. Compare Memorandum of Law in Support at 14 with Turner v. Hershey Chocolate U.S., 440 F.3d 604, 612 (3d Cir. 2006) (noting that whether a job function is essential is a factual determination based on *all* relevant evidence). See also id. (noting that the factors considered in evaluating whether a job function is essential include (1) the reason the position exists; (2) the number of employees available among whom the function can be distributed, and (3) the highly-specialized nature of the function); cf. Memorandum of Law in Support at 14-15

---

24. (...continued)
that Defendant is familiar with the addictive properties of cigarettes, it must observe that this line of argument appears most inappropriately directed at Plaintiff's moral character. For while it is certainly true that an individual suffering from coronary disabilities should not smoke cigarettes, it is also resoundingly self-evident that continued patterns of addiction do not belie disabilities.

(noting that evidence of whether a particular function is essential includes an employer's judgment, its job descriptions,[25] and whether the function can be distributed among other employees).

Plaintiff's evidence is that (1) the primary function of his position was to assemble merchandise and he could perform this function efficiently while seated, (2) he was hired for his mechanical ability, and (3) co-workers were available to assist with heavy and overhead lifting, as a previously-provided accommodation to Plaintiff's medical restrictions and/or in accordance with Defendant's own policies regarding "team lifting". Thus, there exist material fact questions and evidence from which a reasonable jury could conclude that, with reasonable accommodation, Plaintiff could have continued to perform his job as he had in the past.[26]

**(c) Adverse Employment Decisions**

Discrimination under the ADA encompasses a failure to make reasonable accommodation, as well as adverse employment actions. See, e.g., Taylor v. Phoenixville School Dist., 174 F.3d 142, 151 (3d Cir. 1999); Williams v. Philadelphia Housing Auth. Police Dept., 380 F.3d 751, 761 n. 6 (3d Cir. 2004).[27] The reasonableness of a particular accommodation is,

---

25. The Assembler job description includes an ability to lift fifty (50) pounds. See Brief in Opposition at 15 n. 14. Under the ADA, an "essential function" evaluation may look to job descriptions, but may also look to the employer's past practice/policy as to the job in question and similar positions. See Turner, 440 F.3d at 612.

26. Cf. Griffith v. Wal-Mart Stores, Inc., 135 F.3d 376 (6th Cir. 1998) (reversing and remanding summary judgment to employer, given material fact questions of plaintiff's ability to perform essential functions of sales position, where plaintiff's evidence was that he had successfully performed that position for two years with reasonable accommodations to his lifting and standing restrictions owing to back injury)

27. But see Thursby v. City of Scranton, 2006 WL 1455736, *5 n. 7 (M.D. Pa. May 25, 2006)
(continued...)

generally, a cost-benefit analysis. See Gaul, 134 F.3d at 580-81; Skerski v. Time Warner Cable Co., 257 F.3d 273, 284 (3d Cir. 2001) (directing that, on issue of reasonable accommodation, employee bears burden of identifying an accommodation the costs of which facially do not clearly exceed its benefits); id. (further directing that once a plaintiff has suggested a plausible accommodation, the risk of non-persuasion falls on the defendant - that is, defendant's burden of persuading the factfinder that the proposed accommodation is unreasonable merges with its burden of showing, as an affirmative defense, that such accommodation would cause undue hardship); cf. Walton v. Mental Health Ass'n of Southeastern Pennsylvania, 168 F.3d 661, 670 (3d Cir. 1999) (explaining that summary judgment may be granted for defendant only "in cases in which the plaintiff's proposal is either clearly ineffective or outlandishly costly").

An employee and his employer have a joint responsibility to determine what accommodations are reasonably necessary and possible. It is therefore expected that they will engage in a good faith, interactive process and dialog in attempting to enable the employee to continue her employment. See, *e.g.*, Taylor, 174 F.3d at 157 (noting that "both parties have a duty to assist in the search for reasonable accommodation and to act in good faith");[28] 29 C.F.R. § 1630.2(o)(3) (explaining that "it may be necessary for the employer to initiate an informal,

---

27. (...continued)
(questioning whether, under Taylor, a plaintiff may be entitled to recovery for employer's failure to affect reasonable accommodation that does not culminate in other tangible adverse employment action, such as a causally-related termination).

28. See also Taylor v. Phoenixville School Dist., 184 F.3d 296, 317 (3d Cir. 1999) (explaining that employer can show good faith by meeting with employee, requesting information about the condition/limitations, asking what the employee specifically wants, showing some sign of having considered the request, and offering and discussing available alternatives when the request is too burdensome).

15

interactive process with the employee in need of accommodation", which process should identify the employee's limitations and "the potential reasonable accommodations that could overcome those limitations"); 29 C.F.R. Pt. 1630, App. §§ 1630-9 at 359 (providing that "[o]nce a qualified individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation").[29] Cf. Clark v. Germantown Hospital and Medical Center, 2001 WL 12221 (E.D. Pa. Feb. 13, 2001) (denying motion to dismiss where defendant, on receipt of request for reasonable accommodation, placed plaintiff on involuntary unpaid leave of absence and subsequently terminated her); id. at *3 (concluding that defendant "failed to meet its burden under the ADA to engage in an 'interactive process' with plaintiff" as required under Taylor).

In this case, Plaintiff alleges the additional adverse employment actions of involuntary unpaid leave[30] and immediate removal from the Assembler work schedule, followed by termination of his employment.[31] The Court is troubled by the evidence suggesting that Wal-Mart immediately required that Lennex take an indefinite unpaid leave, during which several-month

---

29. See also Williams, 380 F.3d at 761.

30. Compare Memorandum of Law In Support at 16 ("Plaintiff cannot show that Wal-Mart's provision of a medical leave of absence . . . constituted an adverse action under the ADA.") with ****.

31. Compare Memorandum of Law in Support at 17 ("Nor can Plaintiff establish that Wal-Mart terminated his employment . . . . Plaintiff abandoned his employment after refusing to accept a position that satisfied all alleged medical restrictions . . . .") with Defendant's Statement of Facts at ¶ 9 ("This Leave of Absence packet further informs associates that . . . [i]f you refuse to accept an offered position . . ., your employment will be separated."). See 29 C.F.R. Pt. 1630, App. 1630.2(o) (directing that an employer "may reassign an individual to a lower graded position if there are no accommodations that would enable the employee to remain in the current position and there are no vacation equivalent positions for which the individual is qualified").

16

period it declined to discuss his position with him and made no informed assessment of the cost-benefit of his requested accommodation. To the extent that Defendant suggests that immediate involuntary unpaid leave is a courtesy extended to employees who request accommodation, and that it would be appropriate to simply immediately discharge such employees instead, Defendant misunderstands federal discrimination law. Compare discussion in text *supra* with, *e.g.*, *supra* n. 7.[32]

### 2. Retaliation

To establish a *prima facie* case of retaliation, Plaintiff must demonstrate that (1) he engaged in protected activity; (2) Defendant took materially adverse employment action(s) against him; and (3) there was a causal connection between his participation in the protected activity and the adverse employment action. See, *e.g.*, Hare v. Potter, 220 Fed. Appx. 120, 127 (3d Cir. 2007) (citing Burlington Northern & Santa Fe Railway Co. v. White, 126 S.Ct. 2405, 2415 (2006). Cf. Nelson v. Upsala College, 51 F.3d 383, 386 (3d Cir. 1995); Memorandum of Law in Support at 18. The evaluation of a causal connection is a fact-specific inquiry which looks at the record as a whole. See Farrell v. Planter's Lifesavers Co., 206 F.3d 271, 279 n. 5 (3d Cir. 2000). Plaintiff's alleged protected activity was his request for accommodation.[33] Defendant's alleged retaliatory

---

32. Cf. also Memorandum of Law in Support at 16 (averring that "leave of absence was intended to provide Plaintiff with time away from work while maintaining his eligibility for benefits and continuity of employment . . . since he claimed he could not perform his regular work duties due to a medical condition").

33. See Williams v. Philadelphia Housing Auth. Police Dept., 380 F.3d 751, 759 n. 2 (3d Cir. 2004) ("The right to request an accommodation in good faith is no less a guarantee under the ADA than the right to file a complaint with the EEOC . . . .").

17

conduct was placing Lennex on immediate involuntary unpaid leave and/or subsequently terminating his employment.[34]

The temporal relationship between the protected activity and the adverse employment action is an important component in assessing the requisite causal relationship. See, *e.g.*, Woodson v. Scott Paper Co., 109 F.3d 913, 920 (3d Cir. 1997). The standard is not, however, simply *post hoc, ergo propter hoc*.[35] In this case, Plaintiff has demonstrated sufficient evidence of a temporal relationship and of pretextual explanations. See *supra*. Although it appears significantly more possible that a reasonable jury would conclude that Plaintiff suffered disability discrimination than retaliation, the Court should not, on the record before it, conclude that a finding of retaliation would be unsustainable. Rather, in light of the temporal relationship and other circumstantial evidence, it is possible that a jury could find a causal connection between Defendant's adverse employment actions and Plaintiff's statutorily-protected activity.[36]

---

34. In Burlington, the Defendant temporarily suspended the plaintiff without pay, an action which the Supreme Court held was "materially adverse", *i.e.*, which was "likely to deter discrimination victims from complaining." 126 S.Ct. at 2416-2418.

35. See Delli Santi v. CNA Ins. Cos., 88 F.3d 192, 199 n. 10 (3d Cir. 1996) (stating that "timing alone will not suffice to prove retaliatory motive"); cf. Krouse v. American Sterilizer Co., 126 F.3d 494 (3d Cir. 1997) (discussing whether timing alone can ever be sufficient to establish causal link and concluding that timing must be "unusually suggestive" of retaliatory motive before causal link will be inferred).

36. Cf. Lawrence v. National Westminster Bank N.J., 98 F.3d 61, 67 (3d Cir. 1996) (noting that "[o]n summary judgment, it is not the Court's role to weigh the disputed evidence and decide which is more probative" and that "the question is whether the record could support an inference that the employer did not act for a non-discriminatory reason") (citations omitted); Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000). See Kaufer v. UPMC Health Plan, Inc., 2006 WL 1984636 (W.D. Pa. July 13, 2006) (denying summary judgment on disability discrimination and retaliation claims).

### 3. Pretext

In response to Plaintiff's claims of failure to accommodate and discriminatory/retaliatory treatment and termination, Defendant proffers assertions that Plaintiff could not perform the essential functions of the job, abandoned his position, was terminated for poor job performance and/or could not most efficiently assemble bicycles while seated. Plaintiff, however, disputes many of the relevant material facts and asserts that Defendant's proffered reasons are pretextual. Summary judgment is inappropriate where the plaintiff provides evidence "from which a fact finder could reasonably either (1) disbelieve Defendant's articulated reasons or (2) believe an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994); see also Farrell, 206 F.3d at 286; Brief in Opposition at 12-13, 15. A reasonably jury may reject proffered explanations if they are weak, implausible, inconsistent, or contradictory. See Tomasso v. The Boeing Co., 445 F.3d 702, 706 (3d Cir. 2006); Abramson v. William Paterson College of New Jersey, 260 F.3d 265, 276 (3d Cir. 2001).

Plaintiff provides evidence, as discussed above, that neither lifting more than fifteen (15) pounds nor standing for more than fifteen (15) minute intervals were essential functions of the Assembler position; that he repeatedly attempted to return to his position and to obtain reasonable accommodation; and that he had received satisfactory performance reviews and successfully performed his job, *i.e.*, assembling merchandise with the freedom to sit on a chair or stool as desired/needed, for more than eight months.

## III. CONCLUSION

Owing to the establishment of genuine questions of material fact as more fully set forth above, it is recommended that Defendant's Motion for Summary Judgment be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrate Judges, the parties are allowed ten (10) days from the date of service to file objections to this report and recommendation. Any party opposing the objections shall have ten (10) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

    /s/ Lisa Pupo Lenihan
LISA PUPO LENIHAN
United States Magistrate Judge

Dated: February 29, 2008